IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAHMOUD BAGHDADY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 97 C 8794 |
| v. ) | |
| ) | Magistrate Judge Maria Valdez |
| ROBBINS FUTURES, INC.; ROBBINS ) | |
| TRADING CO.; JOEL ROBBINS; and ) | |
| MARK MARTIN, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Plaintiff's Amended Motion Pursuant to Federal Rule of Civil Procedure 59(a) and (e) for Judgment Notwithstanding Verdict or in the Alternative for New Trial [Doc. No. 338]. For the reasons that follow, Plaintiff's motion is denied.

## BACKGROUND

Plaintiff Mahmoud Baghdady brought this action against defendants Robbins Futures, Inc. ("RFI"), Robbins Trading Co., Joel Robbins, and Mark Martin alleging (1) common law fraud; (2) fraud under the Commodity Exchange Act, 7 U.S.C. § 6b; (3) unauthorized trading/wrongful liquidation; and (4) negligence. On February 16, 2006, a

jury verdict was returned against Plaintiff on all of his claims.[1] Plaintiff now moves the Court for judgment notwithstanding the verdict or, in the alternative, for a new trial.

## DISCUSSION

"To warrant judgment as a matter of law because of legal insufficiency of evidence, there must have been 'no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party.'" *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1043 (7th Cir. 1999) (citation omitted). "Attacking a jury verdict is a hard row to hoe. . . . We will not disturb the jury verdict unless [the movant] can show that 'no rational jury could have brought in a verdict against [it].'" *Id.* (citation omitted). In ruling on a motion for judgment as a matter of law, a court's analysis "'is limited to whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed.'" *Id.* at 1043-44 (citation omitted).

Similarly, in order to receive a new trial, the jury's verdict must be "against the manifest weight of the evidence." *King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006) (explaining that the movant "must demonstrate that no rational jury could have rendered a verdict against" him). The Court "must view the evidence in a light most favorable to [the non-movant], leaving issues of credibility and weight of evidence to the jury, and sustain the verdict where a 'reasonable basis' exists in the record to support the outcome." *Id.*

---

[1] Defendant/Counter-Plaintiff also RFI brought three counterclaims against Baghdady: (1) breach of contract; (2) common law fraud; and (3) common law fraud/wilful and wanton conduct. The jury returned an advisory verdict against Plaintiff on Defendants' counterclaims, which were tried before the Court.

2

Plaintiff's motion argues that the following alleged errors justify a judgment notwithstanding the verdict or a new trial: (1) the jury's verdict was against the manifest weight of the evidence; (2) the jury was improperly influenced by Defendants' arguments relating to Plaintiff's 1991 bankruptcy; (3) the jury was improperly influenced by the admission of the tape of the phone conversation referred to as "Call Number 311"; (4) the jury was improperly influenced by the Court's exclusion of testimony from Plaintiff's expert relating to Plaintiff's margin status as of October 16, 1997; and (5) the Court improperly allowed Defendants to argue that the correct margin call on October 17, 1997 was $125,000, when Defendants had stated in a prior pleading that the correct margin call was $100,000.

A. **Manifest Weight of the Evidence**

Plaintiff argues that the evidence presented at trial was "overwhelmingly contrary to the verdict," specifically that (1) Plaintiff had an agreement with Defendants and fulfilled the terms of that agreement by wire transferring $40,000 to Defendants; and (2) defendant Joel Robbins ordered the liquidation of Plaintiff's account without having any information before him.

The Court first notes that Plaintiff's argument, like the rest of his motion, is unsupported by any case law. Furthermore, Plaintiff has not cited to any part of the record to support his contention that the evidence was contrary to the verdict. In any event, Plaintiff has not shown that there is no evidentiary basis for the jury's findings that he was under-margined on October 17, 1997, that he did not fulfill Defendants' requirements in meeting his margin call, and that Robbins was justified in liquidating his trading account. Indeed, the jury's verdict was supported by substantial evidence.

3

### B. Evidence of Bankruptcy

Plaintiff contends that it was improper for defense counsel to argue that a $5,500,000 "trade" or business loss listed on the 1991 bankruptcy form was a "trading" loss. Plaintiff's motion *in limine* to exclude evidence of the bankruptcy was denied, as was an oral motion for reconsideration. According to Plaintiff, it was prejudicial to allow Defendants to bring the bankruptcy before the jury because the judgment was unrelated to futures trading, and it was reversed in Egypt. Plaintiff also argues that other debts listed on the 1991 bankruptcy filing were irrelevant to the 1997 futures transactions.

Defendants respond that evidence of Plaintiff's prior bankruptcy was relevant to show that he made a material misrepresentation when he opened his trading accounts with Defendants, which supported Defendants' claim against Plaintiff for fraud. Defendants further contend that Plaintiffs had the opportunity to testify about the bankruptcy records and explain why they were not evidence of the material misrepresentation.

The Court finds that the bankruptcy evidence was clearly relevant to Defendants' counterclaims and that Plaintiff had ample opportunity to explain to the jury his version of events leading up to both the bankruptcy and the listed trading losses. Plaintiff has thus failed to meet his burden of demonstrating either that the Court's refusal to exclude this evidence of bankruptcy was incorrect or that the jury was improperly influenced by the introduction of this evidence.

### C. Admission of "Call Number 311"

Plaintiff argues that because Defendants' tape recordings of phone calls produced to Plaintiff in 1999 did not contain a particular call that Defendants labeled "Call Number

4

311," he was prevented from conducting a forensic examination of the tape in order to rebut Defendants' arguments related to the timing of the particular conversation. Plaintiff argues that he was therefore unable to respond to Defendants' argument that the sequence of the October 17 wire transfer fax and the conversation could not occur as Plaintiff contended.

Plaintiff also argues that the transcript of Call Number 311 Defendants introduced at trial differed from a transcript they had previously introduced in court. According to Plaintiff, the transcript introduced at trial omitted an opening phrase indicating that Plaintiff initiated the call to defendant Mark Martin, thus giving the "appearance" that Martin had instead called Plaintiff.

Defendants respond that Plaintiff had an opportunity to inspect tapes of conversations, including Call Number 311, in October 1999. Plaintiff declined Defendants' offers to inspect the original tapes at the offices of either Defendants or their attorneys. Defendants further point out that the offer to inspect the original tapes was renewed in open court during a pre-trial hearing, and Plaintiff again declined to do so. Defendants also state that Plaintiff had the opportunity to rebut any reference to the timing of the facts and Call Number 311. Finally, Defendants maintain that Plaintiff's proposed rebuttal argument would not have changed the jury verdict in any event.

The Court agrees that Plaintiff had a sufficient opportunity to review the original tape containing Call Number 311 but that he chose not to. Furthermore, Plaintiff has not persuaded the Court that the outcome of the trial would have been different had he presented his argument about the timing of Call 311 to the jury. Plaintiff has also not

offered any proof, only a conclusory argument, that the transcript of the conversation was in error, or if the transcript was incorrect, that it affected the jury's verdict.[2]

### D. October 16, 1997 Margin Call Status

Plaintiff next argues that his inability to present expert testimony related to his margin status on October 16, 1997, the day prior to liquidation, improperly influenced the jury. Plaintiff states that Defendants produced relevant documents on January 16, 2006, the month before trial, and his expert, Michael Maduff, was prepared to testify based upon those documents that the account was not under-margined on October 16, 1997. The Court, however, barred Maduff from testifying about anything not contained in his 2000 expert report. Plaintiff argues that preventing Maduff from testifying allowed Defendants to mislead the jury about the margin call status of his account as of October 16.

Defendants remind the Court that the discovery dispute related to the documents produced in January 2006 was resolved prior to trial. At that time, the Court ruled that Maduff would be allowed to change the opinions in his 2000 report based on the January 2006 documents, but only to the extent that the documents changed the report's existing conclusions. Maduff would not be allowed to present a new opinion not previously contained in the 2000 report, and if he did change any conclusions, Plaintiff was required to present him for a deposition.

Plaintiff did not then present a revised expert report to the Court, nor did he offer Maduff up for a deposition. Therefore, the Court is not persuaded by Plaintiff's argument

---

[2] The Court notes that transcripts of the conversations were shown to the jury as the tape recordings were being played, but the transcripts themselves were not offered as evidence and were not provided to the jurors during deliberations.

6

that Maduff was improperly restrained from testifying about the January 2006 documents or that the jury was misled as a result.

### E. Amount of Margin Call on October 17, 1997

Finally, Plaintiff argues that Defendants were improperly allowed to argue that the correct margin call on October 17, 1997 was $125,000, rather than $100,000.[3] Plaintiff argues that Defendants' statement in a December 2002 brief that "the correct margin call was $100,000" amounted to a judicial admission and that the Court improperly denied him the opportunity either to cross-examine the defense witnesses about this alleged judicial admission or to discuss the alleged admission in his closing argument.

Defendants argue that, pursuant to this Court's order, the parties submitted documents reflecting all of their agreed judicial admissions, and a judicial admission regarding the margin call was not contained in their submissions. Defendants further argue that Plaintiff was able to introduce evidence of a phone conversation between himself and defendant Martin, in which Martin made a $100,000 margin call on October 17, 1997.

In an order dated February 2, 2006, the Court granted Plaintiff's motion *in limine* for an order finding that certain admissions Defendants made in relation to various motions for summary judgment were binding at trial. The Court's ruling was based upon the doctrine of the law of the case, as a magistrate judge previously had determined that

---

[3] Plaintiff also complains that Defendants supported their argument by introducing documents produced on January 26, 2006, after the close of discovery. However, that discovery issue was resolved prior to trial, and the Court did not find that Defendants had committed any discovery violations. Plaintiff's undeveloped argument will therefore be disregarded.

7

the statements were "like judicial admissions." The Court expressly noted, however, that the law was unsettled, and it was unclear whether those statements would constitute judicial admissions, which are conclusive at trial, or merely evidentiary admissions, which may be controverted or explained. (*See* 2/2/06 Order at 2-6.) Ultimately, the Court ordered the parties to submit a document reflecting stipulated judicial admissions.

Significantly, the statements that this Court found to constitute judicial, or at least evidentiary, admissions, were part of Defendants' Local Rule 56.1 statement of facts. In the present motion, Plaintiff argues that a statement made in a reply brief should be considered a judicial admission. Plaintiff, however, offers no authority for his theory that a party should be judicially bound by every statement made in a legal brief. Furthermore, the Court agrees with Defendants that, in light of the evidence Plaintiff was allowed to present, it is difficult to conclude that Plaintiff was prejudiced by the Court's decision not to allow an attorney's statement in a brief to be introduced as a judicial admission.

## CONCLUSION

For the foregoing reasons, Plaintiff's Amended Motion Pursuant to Federal Rule Civil Procedure 59(a) and (e) for Judgment Notwithstanding Verdict or in the Alternative for New Trial [Doc. No. 338] is denied.

**SO ORDERED.**  **ENTERED:**

DATE: AUG 2 2 2007

HON. MARIA VALDEZ
United States Magistrate Judge

8