IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAHMOUD BAGHDADY, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | No. 97 C 8794 |
| v. | ) | |
| | ) | Magistrate Judge Maria Valdez |
| ROBBINS FUTURES, INC.; ROBBINS | ) | |
| TRADING CO.; JOEL ROBBINS; and | ) | |
| MARK MARTIN, | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff/Counter-Defendant Mahmoud Baghdady brought this action against
Robbins Futures, Inc. ("RFI"), Robbins Trading Co., Joel Robbins, and Mark Martin,
alleging, among other things, that they had violated Section 4b of the Commodity
Exchange Act, 7 U.S.C. § 6b. Defendant/Counter-Plaintiff RFI responded by asserting
three counterclaims against Baghdady: (1) breach of contract; (2) common law fraud;
and (3) common law fraud/wilful and wanton conduct.

A jury trial on Baghdady's claims and a concurrent bench trial on RFI's claims
ended February 16, 2006. The jury found in favor of Defendants on all of Baghdady's
claims and judgment was previously entered on those claims. The jury also entered an
advisory verdict in favor of Defendant/Counter-Plaintiff RFI on its claims of breach of
contract and fraud but recommended that punitive damages not be awarded against

Baghdady. The following constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a) on RFI's claims against Baghdady.[1]

## **FINDINGS OF FACT**

1. Plaintiff/Counter-Defendant Mahmoud Baghdady is a citizen and resident of the State of New Jersey.

2. Defendants Joel Robbins and Mark Martin are both citizens and residents of the State of Illinois.

3. Defendants Robbins Trading Co. and RFI are Illinois corporations with a principal place of business in Chicago, Illinois.

4. RFI is a registered Futures Commission Merchant ("FCM").

5. In September of 1997, Baghdady entered the World Cup Championship of Futures Trading competition, a commodity futures trading competition sponsored by RFI.

6. In order to enter the competition, Baghdady deposited with RFI $50,000, plus a $1000 entry fee, by wire transfer, on or about September 11, 1997. Baghdady opened a trading account, and an independent, second account which defendant Joel Robbins asked Baghdady to open in order to add funds in case of margin calls or if he needed to adjust his positions.

7. RFI and Baghdady entered into a written agreement on September 11, 1997.

8. The purpose of the agreement between RFI and Baghdady was to allow Baghdady to be able to trade commodity futures contracts through RFI.

---

[1] RFI filed proposed findings of fact and conclusions of law; Baghdady responded to RFI's proposed findings but did not file a competing proposal.

9.  The terms of the contract between Baghdady and RFI were as follows:

    a.  Baghdady agreed to maintain such collateral and/or margin as required by RFI;

    b.  Baghdady agreed that he would make deposits of margin upon request of RFI within a reasonable time of the request;

    c.  Baghdady agreed that one hour may be deemed a reasonable time to make a deposit of margin;

    d.  Baghdady agreed that if he failed to deposit sufficient funds and/or to satisfy margin demands, RFI could liquidate his accounts;

    e.  any of Baghdady's property carried in any of RFI's accounts could be used to satisfy any indebtedness owed to RFI without notice to Baghdady;

    f.  Baghdady was liable for all losses in his accounts including interest and attorneys' fees; and

    g.  RFI was entitled to receive interest on any unpaid debit in his accounts in an amount of 12% per annum or 2% plus the rate announced from time to time by American Bank and Trust as its prime commercial rate for the entire period of time the debit exists, whichever is greater.

10. In conjunction with the written agreement, RFI provided Baghdady with an account application, and Baghdady completed that application.

11. One of the questions on the application asked if Baghdady had ever left a debit balance at a brokerage firm.

12. RFI's purpose in asking Baghdady and all potential customers about debit balances is to protect the firm from liability.

13. Baghdady checked the box marked "no" to this question.

14. Baghdady had previously left a debit balance at the brokerage firm of Lind Waldock & Co.

15. Baghdady's bankruptcy records show a "trade losses" claim of $5,500,000.

16. Baghdady disputes that the "trade losses" of $5,500,000 refers to a loss left at a commodity futures or securities brokerage firm.

17. Baghdady's bankruptcy records also show a "Judgment against Debtor and Baraka Trade Losses in 1989" claim of $100,000.

18. The Court heard no further testimony regarding the $100,000 trade loss claims listed on Baghdady's bankruptcy records.

19. Before his account was opened, Baghdady stated to the Robbins parties that he had not borrowed funds to open the account.

20. On August 1, 1997, Baghdady had signed a promissory note in the amount of $750,000 to his mother.

21. If the Robbins parties had known about Baghdady's prior bankruptcy or the debit balances contained therein, his debit at Lind Waldock, or his promissory note of August 1, 1997, they would not have opened his trading account.

22. Baghdady began to trade his account pursuant to the agreement on or about September 18, 1997.

23. On October 16, 1997, Baghdady's account with RFI became under-margined.

24. Mark Martin, RFI's margin clerk and accountant, informed Baghdady that his account was under-margined and that Baghdady would need to send additional funds to satisfy the margin requirements.

25. Baghdady told Martin that he would send additional funds on October 16 and that he would liquidate his trading positions.

26. Baghdady did not liquidate his trading positions on October 16 and did not send RFI sufficient funds to meet his margin requirements.

27. On October 17, 1997, Baghdady's account was still under-margined by $368,516.52.

28. Through the course of several telephone conversations, Martin ultimately informed Baghdady that the margin requirement was approximately $400,000.

29. Baghdady told Martin that he was liquidating his option positions and wiring $25,000.

30. Martin stated that Baghdady needed to send RFI an additional $100,000 to keep his account open.

31. Baghdady did not wire the $25,000 or the additional $100,000; instead, he wired $40,000 to RFI.

32. Baghdady also liquidated certain options and futures positions.

33. Because Baghdady did not send the $125,000 as required by Martin to adequately margin his account, RFI liquidated the account pursuant to Paragraph 8 of the written agreement.

34. The liquidation resulted in a trading loss of $220,727.18 in Baghdady's trading account.

35. Baghdady had a Treasury Bill in that account worth $39,584.89, leaving a net balance of -$181,142.29.

36. RFI then applied $50,000 that Baghdady had previously deposited in a "security account" with RFI to the -$181,142.29; RFI also applied the $40,000 wire transfer to the debit amount, leaving a total net debit to RFI of $91,142.29.

37. RSI is entitled under its contract with Baghdady to recover the net debit of $91,142.29.

38. RFI is also entitled to recover interest in an amount of 12% per annum or 2% plus the rate announced from time to time by American Bank and Trust as its prime commercial rate for the entire period of time the debit exists, whichever is greater.

39. 12% per annum is the greater amount of interest for the entire period of time this debit has existed.

40. The amount of interest at 12% per annum from the time of the debit to just before trial is $244,082.11.


## CONCLUSIONS OF LAW

### Count I – Breach of Contract

41. "Under Illinois law, the elements of a breach of contract cause of action are '(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages.'" *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, ___ F.3d ___, 2007 WL 2012364, at *6 (7th Cir. July 13, 2007) (citation omitted).

42. The contract between Baghdady and RFI was an enforceable agreement, with adequate consideration and definite terms.

43. RFI performed all required obligations and conditions under the contract.

44. By failing to meet his margin call on October 17, 2007, Baghdady breached his obligation to RFI pursuant to Paragraph 7 of the written agreement.

45. RFI was justified in liquidating Baghdady's account pursuant to Paragraph 8 of the written agreement.

46. RFI suffered damages in the amount of $91,142.29, and pursuant to the terms of the contract, RFI is also entitled to interest in the amount of $244,082.11 as well as attorneys' fees in an amount to be determined.

## Count II – Common Law Fraud

47. "The elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996).

48. Baghdady made a false statement of material fact when he checked the box answering "no" corresponding to the question of whether he had ever left a debit balance at a brokerage firm on his account application with RFI.

49. Baghdady made this statement knowing that it was false.

50. Baghdady made the statement in order to induce RFI to act upon it.

51. RFI had a right to rely upon this statement, and in reliance on the statement, RFI allowed Baghdady to open trading accounts with RFI.

52. The net remaining balance of Baghdady's accounts at RFI was -$91,142.29.

53. RFI suffered damages in the amount of $91,142.29 as a result of its reliance upon Baghdady's false statements.

54. RFI is entitled to damages in the amount of $91,142.29, and pursuant to the terms of the contract, RFI is also entitled to interest in the amount of $244,082.11 as well as attorneys' fees in an amount to be determined.

## Count III – Common Law Fraud/Wilful and Wanton

55. "[P]unitive damages are not favored in Illinois and . . . an award of such damages is appropriate only in cases of intentional, outrageous misconduct." *Jannotta v. Subway Sandwich Shops, Inc.*, 125 F.3d 503, 511 (7th Cir. 1997).

56. "[D]eceit alone cannot support a punitive damage award, but such an award is appropriate where the false representations are wantonly and designedly made. . . . Thus, a plaintiff seeking to recover punitive damages on a fraud claim must show, in addition to simple fraud, gross fraud, breach of trust, or other extraordinary or exceptional circumstances clearly showing malice and willfulness." *Id.* (citations and internal quotations omitted).

57. Baghdady's statements on October 16, 1997 that he would send in the additional funds requested by RFI and liquidate his trading accounts were false statements of material fact.

58. Baghdady made these statements knowing that they were false.

59. Baghdady made the statements in order to induce RFI to act upon them.

60. RFI had a right to rely upon these statements, and in reliance on Baghdady's false statements, RFI allowed Baghdady to continue trading on October 16 instead of liquidating the account.

61. The result of Baghdady's continued trading was that his account became a net debit on October 17, 1997.

62. Baghdady's false statements on October 16 that he would send additional funds and liquidate his account were not made wilfully or maliciously and did not constitute outrageous misconduct.

63. RFI suffered damages as a result of Baghdady's false statements in the amount of $91,142.29, and pursuant to the terms of the contract, RFI is also entitled to interest in the amount of $244,082.11 as well as attorneys' fees in an amount to be determined. RFI is not, however, entitled to punitive damages.

## CONCLUSION

Defendant/Counter-Plaintiff Robbins Futures, Inc.'s Motion for Findings of Fact, Conclusions of Law, and Judgment on the Findings [Doc. No. 330] is granted. This Court finds in favor of Defendant/Counter-Plaintiff Robbins Futures, Inc. in the amount of $91,142.29, plus interest in the amount of $244,082.11. Defendant/Counter-Plaintiff Robbins Futures, Inc. is not entitled to an award of punitive damages. Defendant/Counter-Plaintiff Robbins Futures, Inc. is entitled to an award of attorneys' fees, but further briefing is required before the Court can award a specific amount. Defendant/Counter-Plaintiff Robbins Futures, Inc. is ordered to file a fee petition by

October 1, 2007.  Baghdady may file a response to the petition by October 29, 2007.  The Court will rule by mail on the fee petition.

**SO ORDERED.**                                    **ENTERED:**

DATE: **AUG 2 2 2007**                             *Maria Valdez*
                                                   _____
                                                   **HON. MARIA VALDEZ**
                                                   **United States Magistrate Judge**